POSTED ON WEBSITE

FILED

OCT 14 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Frances Elizabeth Pass,<br><br>    Debtor.<br>_____<br>James E. Salven, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>    v.<br><br>Aladino Joseph Galli, aka Allen Joseph Galli and Frances Elizabeth Pass, fka Frances Elizabeth Galli,<br><br>    Defendants. | Case No. 13-16171-B-7<br><br><br><br><br><br>Adv. Proc. No. 14-1056<br><br>DC No. TGM-1 |

**MEMORANDUM DECISION REGARDING MOTION
FOR SUMMARY JUDGMENT**

Trudi G. Manfredo, Esq., of The Law Office of Trudi G. Manfredo, appeared on behalf of the moving party and plaintiff, James E. Salven, chapter 7 trustee.

The defendant, Aladino Joseph Galli, appeared *in propria persona*.

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

    Before the court is a motion for summary judgment (the "Motion") brought by the plaintiff in this adversary proceeding, James E. Salven, chapter 7 trustee (the "Trustee"). This Motion is opposed by the defendant,

Aladino Joseph Galli ("Galli"). The Debtor in this case, Frances Elizabeth Pass ("Pass"), was originally a named co-defendant.[1] The Trustee seeks a declaration that (1) the residential property where Galli lives is property of the bankruptcy estate, and (2) that it may be sold free and clear of Galli's recorded homestead declaration. This decision turns entirely on the interpretation of California exemption law. There are no triable issues of material fact. For the reasons set forth below, the Motion will be granted in favor of the Trustee as to the "property of the estate" issue. However, it will be denied and judgment may be entered in favor of Galli as to the homestead exemption issue.

The bankruptcy court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 541 and 522,[2] and General Orders No. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

**BACKGROUND.**

Based on the parties' stipulated facts (Doc. #51), the Trustee's separate statement of undisputed facts, and documents in the record to which the court has taken judicial notice, the following facts are found to be undisputed:

---

[1] Pass was named as a defendant and filed a responsive pleading, however, she does not appear to have an interest in the outcome of this dispute. On November 26, 2014, the court entered a civil minute order dismissing Pass from this adversary proceeding. Pass did not participate in this motion for summary judgment.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

1. This bankruptcy commenced on December 30, 2009. Galli and Pass were married at the time and they filed a joint petition under chapter 13, case number 09-62714 (the "Chapter 13 Bankruptcy");

2. The bankruptcy schedules listed an interest in two parcels of property. One was located on Manila Avenue in Fresno, California (the "Manila Ave. Property"). The Manila Ave. Property was described on Schedule A with the code letter "C" as "community property." It was valued at $149,490 against a mortgage of approximately $105,725. The Manila Ave. Property was originally exempted as the joint debtors' residence;

3. The second property was located on Fresno Street in Coalinga, California (the "Coalinga Property"). The Coalinga Property was valued on Schedule A to be worth $38,640 against a mortgage of approximately $54,292;

4. Galli and Pass had been living in the Manila Ave. Property. However, just prior to the bankruptcy, Pass moved to, and took up permanent residence in, the Coalinga Property;

5. Several years prior to commencement of the Chapter 13 Bankruptcy, on March 8, 2002, Galli and Pass recorded with the Fresno County Recorder's Office a Declaration of Homestead for the Manila Ave. Property (the "Declared Homestead");

6. At the commencement of the Chapter 13 Bankruptcy, Galli and Pass were in the process of separating and, on September 7, 2010, a judgment of legal separation (the "Separation Decree") was filed in the Fresno County Superior Court, case number 10-CEFL-03464 (the "Dissolution Action");

7. The Separation Decree describes the Manila Ave. Property as the "community home." Pursuant to the Separation Decree, the Property was

awarded to Galli as his sole and separate property, along with 100% of its mortgage owed to Chase Bank. The parties did not obtain relief from the automatic stay or approval from the bankruptcy court for this purported transmutation of title;

8. On December 19, 2011, while still in bankruptcy, Galli executed and recorded a grant deed purporting to transfer an undivided 50% joint tenancy interest in the Manila Ave. Property back to Pass (the "2011 Grant Deed"). Again, the parties did not obtain relief from the automatic stay or any other approval from the bankruptcy court for this purported transfer of title;

9. On April 23, 2013, a Judgment of Marital Dissolution (the "Dissolution Judgment") was filed in the Dissolution Action. Pursuant to the terms of the Dissolution Judgment, Galli and Pass each retained a 50% interest in the Manila Ave. Property;

10. On September 16, 2013, Pass converted her half of the Chapter 13 Bankruptcy to chapter 7. Her case was assigned number 13-16171 (the "Chapter 7 Bankruptcy"). In amended schedules, Pass described her maritial status as "divorced." She also gave up her exemption in the Manila Ave. Property and claimed a homestead exemption in the Coalinga Property;[3]

11. On October 12, 2013, Galli's Chapter 13 Bankruptcy was dismissed on a motion of the chapter 13 trustee based on Galli's failure to continue the chapter 13 plan payments; and

---

[3]On November 3, 2014, this court overruled the chapter 7 Trustee's objection to Pass' amended homestead exemption of the Coalinga Property. The court found that the Coalinga Property was Pass' permanent residence at the commencement of the Chapter 13 Bankruptcy. *See Memorandum Decision Regarding Objection to Amended Exemptions* (main case doc. no. 97 filed on Nov. 3, 2014).

4

12. On January 15, 2014, Galli recorded another homestead declaration for the Manila Ave. Property (the "Second Homestead Declaration").

**ISSUE PRESENTED.**

In this adversary proceeding, the Trustee prays for (1) a declaration avoiding all post-petition transfers and transmutations of interest in the Manila Ave. Property; (2) a declaration that the Manila Ave. Property retained its character as community property for purpose of this bankruptcy; and (3) a declaration avoiding Galli's Declared Homestead interest in the Manila Ave. Property. The parties have subsequently stipulated that the Manila Ave. Property may be treated as community property for purposes of this bankruptcy which makes it property of the bankruptcy estate subject to administration by the chapter 7 trustee.

Galli's opposition is based on numerous evidentiary objections, all of which are overruled. This court may take judicial notice of documents in this court's record as well as documents filed in the county records and the state court's Dissolution Action. Galli does not seriously dispute the authenticity of any of the documents offered in support of this Motion. Galli also argues that a sale of the Manila Ave. Property would produce little or nothing for the unsecured creditors after payment of the various liens. While this may be true, it has no bearing on the issue before the court.

The Trustee desires to sell the Manila Ave. Property for the benefit of the unsecured creditors. The question of "value" for the estate depends on the efficacy of Galli's Declared Homestead. The Trustee has acknowledged that sale of the Manila Ave. Property is not an option unless the Property can be sold free and clear of the Declared Homestead, meaning Galli would get nothing. Therein rests the ultimate issue which this court

5

must decide.

**SUMMARY JUDGMENT STANDARD.**

Summary judgment in favor of the moving party is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. P. 7056. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

The parties may use summary judgment to dispose of all or part of the asserted claims for relief. *See* Fed. R. Civ. P. 56(a). Additionally, the court may *sua sponte* grant summary judgment in favor of the nonmoving party, as long as "the moving party against whom summary judgment [is] rendered had a full and fair opportunity to ventilate the issues involved in the motion." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982). The filing of a formal cross-motion is not necessary. *See* Fed. R. Civ. P. 56(f); *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

As noted above, there are no disputed issues of material fact. All of the facts necessary to decide this dispute have been fully and fairly presented by the Trustee in the Motion and supporting papers. Therefore, this adversary proceeding appears to be ripe for resolution by summary judgment.

///

## ANALYSIS AND CONCLUSIONS OF LAW.

**The Manila Ave. Property is Community Property.** When Galli and Pass first commenced the Chapter 13 Bankruptcy they jointly owned the Manila Ave. Property and described it in their schedules as the "Debtor's [sic] Residence." They also identified it as "community property" on Schedule A and in the subsequent Separation Decree. Galli does not dispute that characterization in this Motion and even stipulated that Manila Ave. was community property at the commencement of this case. (Stipulated Fact No. 18, Doc. No 51.) As such, the Manila Ave. Property became property of this bankruptcy estate by operation of law. § 541(a)(2).

The Trustee contends that the subsequent efforts to transmute and transfer the debtors' respective interests in the Manila Ave. Property, the Separation Decree, the 2011 Grant Deed, the Dissolution Judgement, and the Second Homestead Declaration, are all void and have no effect on the Trustee's right to administer the Manila Ave. Property. For the reasons argued in support of the Trustee's Motion, the court agrees. Further analysis is unnecessary here because, as noted above, the "community property" question does not appear to be in dispute. For purposes of this bankruptcy, the Manila Ave. Property may still be treated as community property subject to administration by the trustee.[4]

**The Declared Homestead is an Interest in Property Which Cannot be Avoided.** The homestead exemptions currently available under California law were enacted as part of the Enforcement of Judgments Act

---

[4] Pursuant to the 2011 Grant Deed and the Dissolution Judgment, the Manila Ave. Property is currently vested in Galli and Pass as joint tenants. It is not necessary to actually change the title in the County records unless the Trustee decides to administer the Property for the benefit of the estate; the status of the title has no effect on the administration of this case. If the Trustee abandons the Manila Ave. Property, it can retain the title as agreed to by Galli and Pass.

7

which became effective on July 1, 1983. (Calif. Code of Civ. Proc. ("CCP") § 680.010 et seq.) They fall into two categories; the Article 4, or "automatic" homestead exemption found in CCP §§ 704.710-704.850 and the Article 5, or "declared" homestead exemption found in CCP §§ 704.910-704.995.[5] In California, "the homestead statutes are to be construed liberally on behalf of the homesteader." *Redwood Empire Production Credit Assoc. v. Anderson (In re Anderson)*, 824 F.2d 754, 759 (9th Circuit 1987).

"Article 4 and Article 5 each confer different rights on the debtor, and there is no overlap between these rights. A debtor may thus have Article 4 rights, or Article 5 rights, or both or neither." *Id.* at 756.

When Galli and Pass originally exempted their interest in the Manila Ave. Property, they claimed the Article 4 "automatic" homestead exemption available under CCP § 704.730, which entitled them to a joint exemption of the Property's equity up to $100,000.[6] This was more than sufficient to exempt the full amount of equity in the Manila Ave. Property. When Pass subsequently converted her case to chapter 7, and shifted her homestead exemption to the Coalinga Property, she again relied upon CCP § 704.730 which entitled her to an exemption in a lesser amount. However, Galli is not a debtor in this bankruptcy and the exemption at issue here, Galli's Article 5 Declared Homestead, is rooted in California law under CCP § 704.910 et seq.

The amount of homestead exemption available under both Article 4 and Article 5 is the same. When both spouses are entitled to a homestead under California law, . . . "the homestead shall be apportioned between the

---

[5]The Article 4 and 5 exemption statutes are found in Title 9, Division 2, Chapter 4 of the California Code of Civil Procedure.

[6]Amended Schedule C, Chapter 13 Bankruptcy, Doc. No. 18.

8

spouses on the basis of their proportionate interests in the homestead." CCP § 704.730(b). Since Galli only held a 50% undivided "community" interest in the Manila Ave. Property at the commencement of the Chapter 13 Bankruptcy, it follows that Galli's exemption rights, if any, in the Manila Ave. Property must be apportioned to reflect that fact. The court need not decide at this time how Galli's homestead interest should be aportioned, such determination was not requested in the adversary proceeding and that issue can be determined when and if the Trustee sells the Manila Ave. Property. Even if Galli's exemption is limited to $50,000 (50% of the joint exemption limit), there appears to be little or nothing left for the Trustee to recover for the unsecured creditors.

The Trustee does not dispute the fact that the Manila Ave. Property is Galli's homestead, or that Galli and Pass met the statutory requirements for the Declared Homestead at the time it was recorded in 2002. However, the Trustee challenges Galli's right to exempt any interest in the Manila Ave. Property because Pass has been allowed a separate Article 4 homestead exemption in the Coalinga Property. The Trustee contends that Galli's exemption rights were somehow lost when Pass exempted the Coalinga Property. The Trustee's argument is summarized in the points and authorities as follows:

> Here, at the time of the filing of the bankruptcy petition, Pass and Galli occupied separate homesteads. Pass's amended claim of exemption [after the judgment of separation was filed] wherein she exempted the equity in her Coalinga house has been upheld by this Court. *Since only one homestead of one of the spouse's can be exempt, Galli may not exempt the equity in the Manila house.*

P. & A. Mot. Summ. J., 12:3-8., Dec. 22, 2014, emphasis added.

The statutory basis for this argument is CCP § 704.720(c), which provides:

/ / /

> (c) If the judgment debtor and spouse of the judgment debtor reside in separate homesteads, *only the homestead of one of the spouses is exempt* and only the proceeds of the exempt homestead are exempt.

CCP § 704.720(c) (emphasis added).

Therein lies the conundrum. If Galli and Pass were both in bankruptcy, then the limitation in § 704.720(c) would be the end of the inquiry. But Galli is no longer in bankruptcy so technically, he is not the "judgement debtor" and he is no longer the spouse of a "judgment debtor." CCP § 704.710(d). When read in context with the entire statutory scheme, the application of subsection 704.720(c) is unclear. For example, why would CCP § 704.730(b) call for the apportionment of separate homestead exemptions if only one homestead exemption may be enforced? To resolve this issue, the court must look closely at the nature of the Article 5 homestead exemption, and the interest it creates in the underlying property.

The Declared Homestead arises under CCP § 704.930 upon the recording of a proper form. The Trustee takes no issue with the form of Galli's Declared Homestead. Perhaps the most important factor in this analysis is the mandate that a judgment lien does not attach to a prior recorded homestead. With some exceptions not applicable here, a judgment lien can only attach to the equity, if any, in excess of the allowed homestead. CCP § 704.950. This is particularly relevant because the Trustee's powers to liquidate estate assets are derived from those of a creditor who holds a judgment lien. § 544.

Other qualities of an Article 5 homestead illustrate its durability. For example, the recording of a homestead declaration does not restrict or limit the owner's right to convey or encumber the declared homestead. CCP § 704.940. The proceeds of a declared homestead remain exempt for a period of six months after a voluntary sale of the homestead property. CCP

§ 704.960. The benefit of a declared homestead continues after the death of the homesteader if the dwelling is still the principal dwelling of a family member. CCP § 704.995. Further, the protection of a declared homestead continues even though the homestead declarant gets divorced. *See California Bank v. Schlesinger*, 159 Cal.App.2nd Supp. 854 (1958)

A valid Article 5 homestead remains effective until it is abandoned by the party claiming the homestead. In this regard, the rights conferred by an Article 5 homestead exemption are significantly different than those conferred under Article 4. *Anderson*, 824 F.2d at 757. The statutes define when and how an Article 5 homestead may be terminated. It may be abandoned by the recording of a declaration of abandonment. CCP § 704.980. It may be abandoned by operation of law if a homestead declaration is subsequently recorded against a different property, but only as to the interest of the declarant. CCP § 704.990. Conversely, the Article 5 homestead is not abandoned simply because the holder of the homestead moves to a different property. CCP § 704.720. Here, the Trustee makes no showing that Galli has done anything to trigger an "abandonment" of his Declared Homestead.

**The Nature of a Sale in Bankruptcy Does Not Terminate the Declared Homestead.** The Trustee also argues that a sale by the Trustee in this bankruptcy would be an involuntary or "forced" sale, suggesting that only the Article 4 automatic homestead exemption, and not the Article 5 Declared Homestead, is protected in a bankruptcy.[7]

The Trustee contends that the Article 5 Declared Homestead is only applicable if Galli voluntarily sells the Manila Ave. Property. In support of

---

[7] The court makes no determination here whether Galli might also be eligible for the "automatic" Article 4 exemption which is generally recognized as applicable in the bankruptcy "forced sale" context.

11

this argument, the Trustee relies on a statement made by the Ninth Circuit Bankruptcy Appellant Panel in the case of *Kelley v. Locke (In re Kelley)*, 300 B.R. 11 (9th Cir. 2003);

> "In the context of bankruptcy; however, Debtor's declaration of homestead helps him not at all, as the additional benefits conferred in [CCP] Article 5 would benefit him only in the situation of a *voluntary* sale."

300 B.R. at 21 (emphasis added).

Based on this statement in *Kelly*, the Trustee suggests that the Article 5 Declared Homestead is meaningless or somehow void. However, the "voluntary" versus "involuntary" nature of what the Trustee might decide to do with the Manila Ave. Property appears to be a distinction without a difference. While CCP § 704.960(a) clearly protects for six months the proceeds of a voluntary sale, it also operates to protect *the proceeds of an execution, or involuntary, sale*:

> If the proceeds of a declared homestead are invested in a new dwelling within six months after the date of a voluntary sale *or within six months after proceeds of an execution sale* or of insurance or other indemnification for damage or destruction are received, the new dwelling may be selected as a declared homestead by recording a homestead declaration within the applicable six-month period. In such case, the homestead declaration has the same effect as if it had been recorded at the time the prior homestead declaration was recorded.

CCP § 704.960(b) (emphasis added).

Further, the Trustee's argument here appears to be inconsistent with the language in CCP § 703.140(c) which makes the Article 5 homestead exemption applicable in a bankruptcy case "regardless of whether there is a money judgment against the debtor or whether a money judgment is being enforced by execution sale or other procedure."

If the Trustee's power to sell the Manila Ave. Property lies in the fact that "community property" is property of the estate over which the Trustee is effectively the owner, then arguably his sale of the "estate"

12

property is a voluntary sale and his argument fails. If the Trustee's power to "force" a sale of the Manila Ave. Property derives from his status as a hypothetical judgment lien creditor (§ 544), then by virtue of CCP § 704.950, the Trustee's "hypothetical" lien does not attach to the Declared Homestead. Either way, if the Trustee sells Manila Ave., the Trustee will have to pay Galli the value of his Declared Homestead, along with all other liens against the Property, before he will have anything to distribute to unsecured creditors.

**CONCLUSION.**

Based on the foregoing, the court finds and concludes Galli's Declared Homestead created an interest in the Manila Ave. Property which has not been abandoned and for which Galli is entitled to compensation if the Manila Ave. Property is sold by the Trustee. Accordingly, the Trustee's Motion for summary judgment will be granted in so far as the Trustee seeks a declaration that the Manila Ave. Property is still community property of the Galli/Pass marriage and still property of this bankruptcy estate. However, the Motion will denied with respect to the Trustee's request that the Manila Ave. Property may be sold free and clear of Galli's homestead interest with no compensation for Galli. The Trustee shall submit a proposed judgment consistent herewith.

Dated: October __14__, 2015

W. Richard Lee
United States Bankruptcy Judge

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Trudi G. Manfredo, Esq.
Attorney at Law
377 W. Fallbrook Ave., Ste. 102
Fresno, CA 93711

Peter L. Fear, Esq.
Attorney at Law
7750 N. Fresno St., #101
Fresno, CA 93720-1145

Aladino Joseph Galli
4245 N. Manila Ave.
Fresno, CA 93727

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721